# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSHUA P. BRAITHWAITE,**

    Plaintiff,

  v.                                                    **Case No. 18-CV-1507**

**LACEE SMELCER, et al.,**

    Defendants.

## ORDER

Plaintiff Joshua Braithwaite filed a lawsuit under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights. (ECF No. 1.) The court screened the complaint and allowed Braithwaite to proceed with a claim that the defendants were deliberately indifferent to his risk of suicide. (ECF No. 10.)

On June 10, 2019, the defendants filed a motion for summary judgment. (ECF No. 19.) About a week later, the court received Braithwaite's motion for summary judgment. (ECF No. 24.) On July 17, 2019, the defendants argued that the court should deny Braithwaite's motion because he filed it late. (ECF No. 28.) Braithwaite is at an e-filing institution, which means his institution library electronically files his documents, thus eliminating the threat of delay which can occur when inmates mail their documents to the court. As the defendants note, none of Braithwaite's filings are dated, so it is not clear when he gave them to the library to e-file. In response to

the defendants' assertion that his motion was untimely, Braithwaite states that the "WSPF library is so back[ed] up that it took them a while to e-file it." (ECF No. 34.)

Braithwaite provides no proof of when he sent his documents to the library for filing, nor does he offer an explanation of why his filings were late. Further, Braithwaite styles his motion both as a motion and as a brief "in opposition to the defendant[s'] motion for summary judgment." (ECF No. 24.) The defendants filed their motion *on* the dispositive motion deadline, so it necessarily follows that Braithwaite filed his motion and response materials *after* the deadline. Nevertheless, the court will not deny his motion on the basis that he filed it one week late. Braithwaite has little experience with litigation, and it does not appear that the short delay prejudiced the defendants.

The defendants also moved for leave to file an untimely reply brief in support of their motion. (ECF No. 30.) They explain that, when Braithwaite filed his motion, they did not realize that he intended it to also serve as his response to their motion. Accordingly, they failed to timely file their reply brief. They assert that they discovered their oversight in the course of preparing their response to Braithwaite's motion. The court will grant their motion to file a reply brief in support of their motion.

1. **RELEVANT FACTS**

The relevant facts are taken from Braithwaite's proposed findings of fact (ECF No. 26), his affidavit in support of his motion for summary judgment (ECF No. 27),

2

and Defendants' Proposed Findings of Fact (ECF No. 21). The facts are undisputed unless noted otherwise.

On April 18, 2016, Braithwaite was placed in observation status for a couple of days because he had tried to commit suicide. (ECF No. 26 at 1.) After he was released from observation, a magnet that said "No Sharps" was placed on his cell door. (*Id.*) Braithwaite states that days went by but he could not quiet the voices in his head. (*Id.*) Braithwaite asserts that he started asking the correctional officers to put him back on observation because he had thoughts of killing himself. (*Id.*) According to Braithwaite, he told defendant Grant Roper that he wanted to kill himself and he needed something sharp. (*Id.* at 1-2) Braithwaite asserts that Roper gave him a pen and told him not to tell anyone. (*Id.* at 2) Braithwaite then sharpened the pen and began to cut his arm and wrist. (*Id.*)

According to the defendants, nursing staff examined Braithwaite on April 24, 2016, after he cut himself. (ECF No. 21 at ¶ 1.) Braithwaite did not need stitches or offsite medical treatment. (*Id.*) He was placed on observation status and closely monitored by security staff and psychological services staff. (*Id.* at ¶ 7.)

On July 11, 2016, Braithwaite was still on a "no-sharps" restriction. (ECF No. 29 at 2.) He asserts that he told defendant Lacee Smelcer that he wanted to kill himself. (*Id.*) According to Braithwaite, she told him to go ahead and do it because she's tired of him crying about nothing. (*Id.*) Braithwaite states that she gave him a spoon and a toothbrush, which he sharpened and used to cut his arm. (*Id.*) The defendants state that Braithwaite was seen by a nurse and that he needed neither

3

stitches nor offsite medical attention. (ECF No. 21 at ¶ 3.) The nurse who treated Braithwaite reported that his laceration was about 2.5 centimeters long. (*Id.* at ¶ 4.)

The defendants explain that, after Smelcer gave Braithwaite a spoon, his cell was searched. (ECF No. 21 at ¶ 6.) Also, additional "sharps restriction" magnets were placed on his cell door, along with a "pen restriction" magnet and a "spoon restriction" magnet. (*Id.* at ¶ 8.)

**2. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary Judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (citations omitted). The court is not required to search through the record to make an argument on behalf of a party. *See Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1001 (7th Cir. 2004) (citations omitted).

3. **Analysis**

To prevail on a claim for deliberate indifference to a serious medical condition, a prisoner must show that (1) he suffered from an objectively serious condition which created a substantial risk of harm, and (2) the defendants were aware of the risk and intentionally disregarded it. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). The Court of Appeals for the Seventh Circuit recently reiterated that "the risk of suicide is an objectively serious medical condition, and it is well established that inmates have the right to be free from deliberate indifference to this risk while in custody." *Lisle v. Welborn*, Case No. 18-1595, 2019 WL 3492163 at *7 (7th Cir. Aug. 1, 2019).

The defendants make only one argument. They maintain that all of Braithwaite's claims fail as a matter of law because he faced no objectively serious risk of harm on either day that he cut himself. The defendants do not address the second prong of the deliberate-indifference standard. To support their argument that Braithwaite cannot satisfy the first prong of the standard, the defendants focus exclusively on the nature of Braithwaite's injuries to himself. They assert that, because Braithwaite made only superficial cuts to his arm that required only minor medical attention, he cannot establish that his threats of suicide or self harm were genuine. In other words, they argue that, because Braithwaite did not succeed in severely injuring himself, he cannot, as a matter of law, establish that he was ever at risk of severely injuring himself. The defendants' legal conclusion is incorrect, and their reliance on two recent cases from this district to support that conclusion is misplaced.

In *Richter v. Vick*, Case No. 17-C-1595, 2018 WL 6813927 (E.D. Wis. Dec. 27, 2018), Chief Judge William C. Griesbach found that the plaintiff had failed to offer any evidence from which a reasonable jury could find that he suffered from a serious mental health condition. Judge Griesbach stated that the undisputed evidence established that the plaintiff "was simply engaged in drug-seeking behavior and used his claim of mental illness and threats to harm himself as the means of obtaining the kind and amount of the drug he was seeking. … As a result, his superficial attempts to harm must be viewed as nothing more than a ploy to accomplish his goal." *Id.* at 8. While Judge Griesbach viewed the plaintiff's minor injuries to himself as confirmation that the plaintiff was not serious about hurting himself, the plaintiff's minor injuries were not the sole basis for that conclusion. The defendants presented evidence about the plaintiff's propensity for falsely or grossly exaggerating his medical complaints in order to receive a reward. This evidence as a whole led Judge Griesbach to conclude that no reasonable jury could find that the plaintiff was ever actually at risk of seriously harming himself.

Similarly, in *Lord v. Beam*, Case No. 18-cv-351, 2019 WL 464138 (E.D. Wis. Feb. 6, 2019), Judge J.P. Stadtmueller held that the evidence demonstrated that, despite the plaintiff's claims to the contrary, no reasonable jury could conclude that the plaintiff was genuinely suicidal at the time he threatened to harm himself. *Id.* at 3. Again, while Judge Stadtmueller considered the severity of the plaintiff's injuries to himself in concluding that the plaintiff had no "real intention of seriously hurting

himself" and "was childishly seeking secondary gain," the severity of his injuries was only one of several factors that supported Judge Stadtmueller's conclusion. *Id.*

Braithwaite asserts that he could not quiet the voices in his head and that he told Roper and Smelcer that he wanted to kill himself. According to Braithwaite, Roper and Smelcer not only encouraged him to kill himself but gave him items he could use to do so. The defendants do not deny Braithwaite's assertions, nor do they present any evidence to support a conclusion that, at the time Braithwaite expressed a desire to hurt himself, Roper and Smelcer had reason to believe Braithwaite was insincere or making threats merely as leverage for secondary gain. Instead, the defendants insist that Braithwaite's failure to inflict a severe injury upon himself shows that he was never serious about hurting himself in the first place.

While a jury could reasonably reach that conclusion, a jury could also reasonably conclude that Braithwaite's threats of self harm were genuine at the time he made them, but, once he started cutting into his arm, he lost his nerve, changed his mind, was interrupted before he could inflict a more serious injury, or lacked the means to inflict a more serious injury. Self-inflicting only minor injuries, without more, does not establish that a person was never at risk of inflicting more serious injuries. Because a genuine dispute exists about whether Braithwaite was at risk of severely injuring himself, neither party is entitled to summary judgment. Further, because "it is well established that inmates have the right to be free from deliberate indifference to [a] risk [of suicide] while in custody," the defendants are not entitled to qualified immunity. *Lisle*, 2019 WL 3492163 at *7 (collecting cases).

The court will, however, grant summary judgment as to Tritt. Unlike his assertions against Roper and Smelcer, Braithwaite does not state that Tritt gave him items he could use to harm himself or that Tritt encouraged him to harm himself. Instead, he argues that Tritt "was the supervisor in [the restricted housing unit]" and had "power to give them training on dealing with mental health inmates." (ECF No. 25 at 4.) He further states that "Tritt fail[ed] to talk to his prison staff and fail[ed] to prevent the incident of self harm." (ECF No. 27 at 2.)

The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992.

Braithwaite asserts that Tritt "knew what was going on." (ECF No. 27 at 2.) However, Braithwaite's conclusory statements are not enough at summary judgment to support a reasonable conclusion that Tritt was aware that Roper and Smelcer were encouraging Braithwaite to harm himself. Because Braithwaite offers no evidence to support a conclusion that Tritt knew Braithwaite was at risk of harming himself, no reasonable jury could conclude that Tritt was deliberately indifferent to that risk.

## 4. Conclusion

**IT IS THEREFORE ORDERED** that Braithwaite's motion for summary judgment (ECF No. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 19) is **DENIED** as to Roper and Smelcer and **GRANTED** as to Tritt.

**IT IS FURTHER ORDERED** that Tritt is **DISMISSED** as a defendant.

**IT IS FURTHER ORDERED** that the defendants' motion for leave to file a reply brief in support of their motion for summary judgment (ECF No. 30) is **GRANTED**.

The court will recruit a lawyer to represent Braithwaite on his surviving claim. After it does so, it will schedule a telephone conference to discuss how the parties would like to proceed.

Dated in Milwaukee, Wisconsin this 19th day of August, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge